[No. 2293-2. Division Two. August 3, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL WAYNE OSBORNE, *Appellant*.

*John M. Wolfe,* for appellant (appointed counsel for appeal).

*Curtis M. Janhunen, Prosecuting Attorney,* for respondent.

PEARSON, J.—Defendant, Daniel Wayne Osborne, appeals from a conviction of second–degree murder. Numerous errors are asserted. We affirm the conviction.

On October 25, 1975, Thomas Zembal was found near a remote country road, dead from multiple stab wounds. In a statement given by defendant to police prior to his arrest, he admitted that he had been with Zembal on the night of October 24, 1975; they had some drinks together, and stole some Prestologs from a grocery store, transporting them in a pickup truck to defendant's residence. Defendant further

stated that he recognized a ring that was in Zembal's possession as a ring belonging to defendant's brother. Defendant stated that he suspected the ring had been stolen, he became angry, struck Zembal, and kicked him out.

The State presented substantial physical evidence linking defendant to Zembal's murder. A search of defendant's residence pursuant to a search warrant revealed several items that were stained with blood, including a piece of rope. The blood stains were of the same blood type as that of the victim. The rope was identical to rope found with the victim's body. Sawdust found with the victim's body came from pressed logs, as did sawdust found in the pickup truck used to haul the stolen Prestologs. Two blankets which were found in the brush along a remote road were identified as blankets that belonged to defendant. The blankets contained human blood stains, and a criminalist testified that the fibers contained in the blankets indicated the victim had been wrapped in the blankets. A verdict of guilty was returned by the jury.

Defendant's first assignment of error deals with the speedy trial requirements of CrR 3.3. Prior to December 17, 1975, the date set for defendant's trial, the prosecution moved for a continuance on the ground that laboratory analysis of physical evidence could not be completed by the trial date. An affidavit of the chief criminalist of Western State's crime laboratory, dated December 9, 1975, stated that substantial efforts had been made to analyze the physical evidence, which had been sent to the laboratory a few days after the victim was discovered, but because of the large number of items to analyze, the sophisticated analysis required, and the heavy workload from other cases, the analysis was incomplete. The criminalist indicated the analysis could be finished by January 5, 1976. The trial court granted the prosecution's motion, continuing the trial to January 5, 1976.

Defendant had not obtained pretrial release and he contends that his trial, which as a result of the continuance was more than 60 days after his preliminary appearance,

violated CrR 3.3's speedy trial provisions. The expert analysis of raw physical exhibits is an important, often crucial, form of the prosecution's evidence. The criminalist's affidavit established that expert analysis of the physical evidence was unavailable, that the State had exercised due diligence, and that there were reasonable grounds to believe that the analysis would be available in a reasonable time. Therefore the delay resulting from the continuance is excluded from the speedy trial period, pursuant to CrR 3.3(e)(2)(ii). *See State v. Lowrie,* 14 Wn. App. 408, 542 P.2d 128 (1975). *State v. Bloomstrom,* 12 Wn. App. 416, 529 P.2d 1124 (1974). Defendant's trial was not violative of CrR 3.3.

Defendant's second assignment of error relates to the constitutional limitations on orders allowing blood samples to be taken from an accused. After defendant was in custody and prior to trial, the State presented a motion for an order allowing a blood sample to be taken from defendant. The supporting affidavit of the prosecutor stated that the victim died of stab wounds, the execution of a search warrant for defendant's residence had produced several items which appeared to be blood stained, a sample of the victim's blood had been obtained, and a sample of defendant's blood would be used for comparison with the blood found in defendant's residence. The trial court granted the motion.

■■ The extraction of a blood sample from an accused is tantamount to a search and seizure of physical evidence, which is governed by the fourth amendment to the United States Constitution. *State v. Wetherell,* 82 Wn.2d 865, 514 P.2d 1069 (1973). Defendant contends that the order authorizing the blood sample was improper because the constitutional requirement of probable cause was not satisfied. An affidavit provides probable cause for the issuance of a search warrant when it supplies rational grounds to believe that evidence of criminal activity will be obtained in the search. *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973); *State v. Hartnell,* 15 Wn. App. 410, 550 P.2d 63

(1976). It is not necessary to convince the issuing magistrate beyond a reasonable doubt that there is probable cause. *State v. Lehman,* 8 Wn. App. 408, 506 P.2d 1316 (1973). The affidavit in support of the motion provided rational grounds to believe that defendant's blood sample would be evidence of criminal activity. Constitutional limitations were not exceeded and therefore the blood sample was properly ordered pursuant to CrR 4.7(b)(2)(vi).

Defendant next challenges the admissibility of evidence obtained in the execution of a search warrant for defendant's residence. The search warrant was issued on the basis of the affidavit of a police detective. The affidavit included statements made to the detective by defendant's wife regarding incriminating actions of defendant, specifically that she saw defendant argue with the victim, strike him, and make slashing motions toward the victim. She saw blood in the victim's chest area, and saw defendant carry the victim from the residence. She saw defendant return 1 1/2 to 2 hours later, when he burned his own clothing and the victim's wallet in the fireplace. Defendant moved to suppress the evidence obtained in the execution of the search warrant, but the motion was denied.

■ Defendant contends that the search warrant based upon an affidavit containing statements of his wife is void because RCW 5.60.060(1) gives defendant the privilege not to have his spouse testify against him without his consent. This privilege, however, applies when the testimony of the spouse is offered at a trial or hearing. *See State v. Clevenger,* 69 Wn.2d 136, 417 P.2d 626 (1966). *See generally* 8 J. Wigmore, *Evidence* §§ 2227–2245 (McNaughton rev. 1961). We hold the privilege is not applicable to the issuance of a search warrant. It is clear that evidence that would not be competent or admissible at trial may nevertheless furnish "probable cause" for the issuance of a search warrant. *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *Giacona v. United States,* 257 F.2d 450 (5th Cir. 1958). *See Tacoma v. Mundell,* 6 Wn. App. 673, 495 P.2d 682 (1972). The policy underlying the

statutory privilege allowing the exclusion of the spouse's statements at trial is not based on the lack of reliability of the statements. *See* 8 J. Wigmore, *supra* at § 2228. A spouse's statements are sufficiently reliable to be considered in determining probable cause to issue a search warrant.

■ The next issue involves the same husband–wife privilege. As part of the State's case, the chief of police identified two blankets he had discovered in the brush along a roadway. The prosecutor asked the police chief to indicate which other persons were present when the blankets were discovered. The police chief responded that his secretary, a police detective, and defendant's wife were present. Defendant moved for a mistrial, but the motion was denied. The blankets were admitted into evidence. Defendant argues that the prosecution was improperly allowed to imply that defendant's wife led police to the blankets when direct testimony of the wife's participation was inadmissible under the marital privilege of RCW 5.60.060(1). As discussed above, defendant has the privilege to prevent his wife from testifying against him. This privilege, however, does not bar testimony as to the wife's presence when the blankets were located. The police chief's reference to the wife's presence is not equivalent to allowing the wife to testify against the accused. *Quinn v. State,* 55 Okla. Crim. 116, 25 P.2d 711 (1933). (Police chief testified to presence of accused's wife when a gun used in the crime was discovered.) Therefore the testimony did not violate the privilege of RCW 5.60.060(1) either directly or indirectly. The testimony was not improper. Defendant's contention that the blankets are inadmissible because they were derived from the wife's statements is also meritless. Defendant's privilege to prevent his wife from testifying against him and the fact that the wife may have led police to the blankets do not render the blankets inadmissible. No "fruit of the poisonous tree" doctrine applies to bar the admission of evidence derived from facts inadmissible under the marital privilege. *See Quinn v. State, supra.*

■ Defendant next challenges the trial court's limitation of cross–examination of Detective Vita. On direct examination, Vita testified about the acquisition of physical evidence. He identified objects seized in the search of defendant's residence and photographs taken during the search. He also testified regarding hair and blood samples. On cross–examination Vita was asked about statements made to him by a Mr. Collier which did not relate to Vita's role in acquiring the physical evidence. This was clearly beyond the scope of direct examination, which related to the foundation and chain of custody for physical evidence. In both civil and criminal cases, cross–examination of a witness is limited to the scope of direct examination. *State v. Hobbs,* 13 Wn. App. 866, 538 P.2d 838 (1975). We find no abuse of discretion in the trial court's limitation on cross–examination. We also note that the evidence solicited, *i.e.,* Collier's statement that he had had a falling out with the victim (an attempt to show the declarant's motive), even if relevant, *see State v. Kwan,* 174 Wash. 528, 25 P.2d 104 (1933), was excludable on hearsay grounds. *See Raborn v. Hayton,* 34 Wn.2d 105, 208 P.2d 133 (1949).

Defendant next assails the constitutionality of the trial court's instruction No. 6. The instruction provides that intent to cause death may be established by inference from all of the facts and circumstances, and in this respect the law presumes that a person intends the natural and probable consequences of his own voluntary acts. Defendant contends that the presumption does not meet due process standards.

■■ The presumption that individuals intend the natural and probable consequences of their voluntary acts is well established in the law. This basic concept of personal responsibility is essential to our legal system. *State v. Mays,* 65 Wn.2d 58, 395 P.2d 758 (1964); *State v. Crudup,* 11 Wn. App. 583, 524 P.2d 479 (1974).

The due process standard that has been applied to statutory criminal presumptions requires that the fact presumed must follow beyond a reasonable doubt from the

proven fact. *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976); *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974). The presumption in instruction No. 6 does not run afoul of due process requirements.

> [T]he so–called presumption of intent does not impose upon the accused any duty to produce evidence. Rather it merely means that the fact–finder *may* (but need not) conclude under those circumstances that *A* intended to kill *B.* Thus the matter is reduced to an inference (or "permissive presumption") rather than a true presumption of the mandatory sort.

(Footnotes omitted.) W. LaFave & A. Scott, *Handbook on Criminal Law* § 28, at 203 (1972). *See* 9 J. Wigmore, *Evidence* § 2511a (3d ed. 1940).

Under instruction No. 6, if it is proven beyond a reasonable doubt that the accused voluntarily committed an act, then the jury is allowed to determine what the natural and ordinary consequences of the proven act are, and they may infer that the accused intended those consequences. The fact presumed follows beyond a reasonable doubt from the proven fact. The burden of proof of an element of the crime is not shifted to the accused, and the trial court did not err in giving the instruction. *See also State v. Odom, supra* (where defendant is shown to have voluntarily fired gun at persons, jury was entitled to infer intent to kill); *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 541 P.2d 989 (1975).

█ Defendant assigns error to the trial court's instruction No. 7, which provides that evidence of motive may be considered by the jury. Evidence of defendant's motive is relevant in a homicide prosecution. *State v. Haga,* 13 Wn. App. 630, 536 P.2d 648 (1975). Evidence of motive was properly presented by the prosecution, and therefore the court could instruct the jury on the evidentiary value of that evidence. The instruction conveys the proper impression that motive is a circumstance that may be considered by the jury. *State v. Bowen,* 12 Wn. App. 604, 531 P.2d 837 (1975).

■ Defendant also assigns error to the trial court's refusal to give his proposed instructions on manslaughter. The evidence that defendant and the victim had been drinking and that defendant was upset with the victim was not sufficient evidence to warrant manslaughter instructions. There was no evidence to support a verdict of manslaughter, and therefore the trial court did not err in refusing to instruct on manslaughter. *State v. Crudup, supra.*

■ On the morning of the start of the trial, the State disclosed its intention to call two stepchildren of defendant as witnesses. The prosecution had just interviewed the children the night before, and they had not been listed as witnesses. The court gave defendant the opportunity to interview the witnesses before they testified. The trial court has discretion to allow unlisted witnesses to testify and should not be overruled except for a manifest abuse of discretion. *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968); *State v. Funches,* 5 Wn. App. 491, 487 P.2d 793 (1971). We find no abuse of discretion.

Defendant's final assignment of error involves the admission of a statement made by defendant while in custody. After defendant was arrested and given the *Miranda* warnings, he invoked his right to counsel and no interrogation took place. Defendant subsequently spoke with an attorney and then chose to exercise his right to remain silent. At trial, a detective testified that he had taken defendant to the courthouse a few days after defendant had been arrested and had asserted his right to remain silent. The detective testified that while in the hallway outside the courtroom, he and defendant engaged in a general conversation. The detective stated that defendant looked tired; then defendant stated that the detective looked tired. The detective responded that he had worked 18 hours straight on the original investigation, and he had worked "straight through again" and that he was tired. The detective then stated that he "wished defendant had seen fit to tell us the truth and saved us a lot of work," and defendant stated

that "I would have liked to, you know. I would have liked to and I wish I could have." At a CrR 3.5 hearing the trial court determined that defendant's statement was voluntary and admissible. Defendant contends that the statement was the result of interrogation and therefore it was not voluntary and admissible. *See Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

We recognize that interrogation encompasses more than question–answer sessions and often the more successful techniques include psychological tactics and patient maneuverings designed to undermine the suspect's will to resist. *State v. Boggs,* 16 Wn. App. 682, 559 P.2d 11 (1977). Defendant's statement, however, was made in the context of a casual conversation. The conversation did not constitute interrogation. Defendant had been allowed to exercise his right to counsel and his right to remain silent. The statement was spontaneous and voluntary and therefore was admissible. *State v. Boggs, supra.*

Additionally we note that there was overwhelming circumstantial evidence of defendant's guilt and defendant's equivocal statement was not sufficiently incriminating to render any error prejudicial. *State v. Boggs, supra; State v. Nist,* 77 Wn.2d 227, 461 P.2d 322 (1969); *Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972).

We affirm.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied September 8, 1977.

Review denied by Supreme Court February 17, 1978.