**UNITED STATES**

v.

**Senior Airman Thomas I. LOVELL, FR
408–02–9079, United States Air Force.**

**ACM 22510.**

U. S. Air Force Court of Military Review.

5 Oct. 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips, and Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Colonel James P. Porter and Captain Robert T. Mounts.

Before EARLY, HERMAN and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of five specifications of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922. The adjudged sentence was a dishonorable discharge, confinement at hard labor for two years, forfeiture of $200.00 per month for 12 months and reduction to airman basic. The convening authority reduced the period of confinement to 18 months and otherwise approved the sentence.

Appellate defense counsel assign seven errors. Except as discussed below, we find them to be without merit.

In their first assignment, appellate defense counsel assert:

THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE THE EXTRAJUDICIAL STATEMENT OF THE ACCUSED'S WIFE.

We disagree.

On the 15th of April, 1978, the accused, using a gun and wearing a rubber mask, interrupted a poker game in the barracks, and robbed the five participants of their money, rings, watches and a wallet. He returned home and displayed the loot, gun and mask to his wife. His wife became frightened and hid the gun, rings, watches and wallet. On 31 July, 1978, she called the Office of Special Investigations (OSI), and informed the agent that she had information relating to the robberies. She subsequently reduced this information to a signed, sworn statement, which stated, in

pertinent part, that her husband had come to her early in the evening of the 15th with a small gun in his waistband and dressed in the clothing later described by the victims as being worn by the robber; that he informed her that he was going to "rip off" the barracks; that he returned about 45 minutes later and showed her the fruits of the crime and said, "You didn't believe I'd do it"; that she put everything but the mask in a flour container, and later moved them to a bean container; that she last saw the items approximately two weeks previously; that she checked "last night" and the items were missing from the container. She also related conversations the accused had during the robbery, and described two of the rings and one of the watches. Though not in the statement, she told the OSI that the clothes worn by the accused were then at their home.

Based on this information the agents of the OSI called the base commander and requested authority to search the accused's quarters on base.[1] The agent advised the base commander that the accused's wife informed him that the accused told her he committed the robberies; that she had seen a weapon, rings and watches in their quarters approximately a week or weeks before; and that the clothing worn by the accused at the time of the robbery was in their quarters.[2]

At the Article 39(a), 10 U.S.C. § 839(a) pretrial hearing, trial defense counsel objected to the receipt of any evidence produced by the wife as being in violation of the marital privilege. The agent, however, was allowed to testify as to the statements the wife made to him, and the sworn statement she had provided the agent was attached to the record as an appellate exhibit. The military judge overruled the objection and admitted the evidence found in the search. No statements of the wife were used in the trial on the merits.

■ The thrust of appellate defense counsel's argument is that the marital privilege prevents the use of any statement of the wife to provide probable cause to search the accused's quarters.[3]

Of the few cases on this precise point, we find most persuasive the decision of *State of Washington v. Osborne*, 18 Wash.App. 318, 569 P.2d 1176, 1180 (Wash.App.1977). There the affidavit of a detective contained statements made by defendant's wife regarding incriminating actions of defendant. In moving to suppress evidence obtained pursuant to a warrant based on that affidavit, defendant contended that the affidavit was void because the state constitution gave the defendant/husband the privilege not to have his wife testify against him without his consent. The court held:

This privilege, however, applies when the testimony of the spouse is offered at a trial or hearing. . . . (Citations omitted). We hold the privilege is not applicable to the issuance of a search warrant. It is clear that evidence that would not be competent or admissible at trial may nevertheless furnish "probable cause" for the issuance of a search warrant. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Giacona v. United States*, 257 F.2d 450 (5th Cir. 1958). . . . The policy underlying the statutory privilege allowing the exclusion of the spouse's statements at trial is not based on the lack of reliability of the statements. . . . A spouse's statements are sufficiently reliable to be considered in determining probable cause to issue a search warrant.

569 P.2d at 1180; see also *United States v. Lefkowitz*, 464 F.Supp. 227, 233 (C.D.Cal.

---

1. The duty judge advocate was also called for his opinion as to the existence of probable cause to search.

2. There is some conflict in the testimony as to what was told the base commander, largely occasioned by the length of time between the search and trial.

3. Testimony of a wife as to the admissions of the husband would not be admissible over his objection on the merits. See Manual for Courts-Martial, 1969 (Rev.), paragraph 151*b* (2); *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); 8 Wigmore, Evidence §§ 2227–45 (McNaughton rev. 1961).

1979); contra, *Osborne v. Commonwealth*, 214 Ky. 84, 282 S.W. 762 (1926).[4]

We hold that the testimonial privilege conferred by paragraph 148e, Manual, *supra*, does not extend to preventing a spouse from furnishing evidence which provides probable cause for authorizing a search. See generally *United States v. Seiber*, 12 U.S.C.M.A. 520, 31 C.M.R. 106 (1961), and cases cited therein. Accordingly, we find no error in the use of the wife's statements since they were considered solely by the military judge and only on the question of probable cause to issue the authority to search.

4. The *competency* of a spouse as a witness is not in question. See Manual, *supra*, at paragraph 148e. The marital privilege applies only to testimony, and the other spouse must assert it. Since the request for search authority is an *ex parte* proceeding, there would be no place for the other spouse to assert the privilege. In this case the wife's statement was introduced only as to the issue of probable cause and was not used against the accused in the case on the merits.

In *State v. Osborne*, 18 Wash.App. 318, 569 P.2d 1176 (1977), defendant also argued that the prosecution was improperly allowed to imply that his wife led police to some blankets which incriminated him, also because of the marital privilege. The court held:

The police chief's reference to the wife's presence is not equivalent to allowing the wife to testify against the accused. . . . Therefore the testimony did not violate the privilege . . . either directly or indirectly. . . . Defendant's contention that the blankets are inadmissible because they were derived from the wife's statement is also meritless. Defendant's privilege to prevent his wife from testifying against him and the fact that the wife may have led police to the blankets does not render the blankets inadmissible. No "fruit of the poisonous tree" doctrine applies to bar the admission of evidence derived from facts inadmissible under the marital privilege.

Other cases where incriminating evidence provided by the wife was held admissible as not violating the marital privilege are listed in *Quinn v. State*, 55 Okl.Cr. 116, 25 P.2d 711, 715 (1933):

In *Commonwealth v. Johnson*, 213 Pa. 432, 62 A. 1064, that court said: "Facts learned by competent witnesses will not be excluded, because they may have been put on the track of the facts by information derived from the wife of the prisoner." To the same effect is *Welker v. New York Central Railroad, et al.,*

In their second assignment, appellate defense counsel assert:

THE AUTHORIZATION TO SEARCH, ISSUED BY THE BASE COMMANDER, WAS NOT BASED ON PROBABLE CAUSE DUE TO MISREPRESENTATIONS BY OSI AGENTS.

We disagree.

The thrust of this assertion is that the base commander was not fully informed by the OSI agents since he was not told that the wife had looked for the gun and fruits of the crime on the preceding night and not found them.

275 Pa. 82, 118 A. 615, 616. In the body of the opinion, that court said: "While the wife would not have been a competent witness against her husband, there is no rule of law which prevents a third person from instituting criminal proceedings based on facts learned through information given by the wife of the accused. The admission of such facts in evidence is not permitting the wife to testify against her husband." In *Clark v. State*, 159 Tenn. 507, 19 S.W.2d 228, that court said: "Testimony of third parties, where otherwise competent, was not rendered incompetent in prosecution of husband because facts related therein were based on extra-judicial and voluntary disclosures of wife."

In *United States v. Winfree*, 170 F.Supp. 659 (E.D.Pa.1959), evidence obtained from defendant's wife and her pretrial statement was sought to be suppressed on the basis of the common law rule that one spouse is incompetent to testify against the other without consent. The court held:

[T]he information was not secured from Mrs. Winfree in any judicial proceeding or trial, much less a trial where life or liberty was at stake. The information was given voluntarily in an extra-judicial investigation, without the violation of any provision of the laws or Constitution of the United States. The defendant has no knowledge of what his wife did, or did not, say on this occasion. The defendant's counsel, in his able brief, has not pointed to any federal case holding that judicial supervision of the administration of criminal justice in the federal courts requires federal agents to refrain from securing, in the extra-judicial investigation of federal crimes, information of this type from a witness who is incompetent to testify at a trial where their procedure is not a violation of federal rules for the guidance of conduct . . . .

170 F.Supp. at 660.

The OSI agent remembered telling the base commander that the wife had seen the weapon, rings, and watches approximately "a week, or weeks ago" and that the clothing worn on the night of the robbery was then at home. The base commander did not remember any specific facts as to the dates the items were in the house but recalled that "some or all of them may have been in the house."

Here we are confronted with a facially-sufficient search authorization since the evidence supplied to the base commander was sufficient to establish probable cause. Counsel would have us go behind the authorization and consider the accuracy of the information provided to the base commander.

■ This Court has consistently followed the rule, favored by the majority of federal courts and recently approved by the Supreme Court, which permits an accused a hearing to go "below the surface of a facially-sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation of the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material." *United States v. Turck*, 49 C.M.R. 49, 53 (A.F.M.C.R.1974), quoting *United States v. Carmichael*, 489 F.2d 983, 988 (7th Cir. 1973); followed in *United States v. Reynolds*, 1 M.J. 823 (A.F.C.M.R.1976); see also *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The military judge properly held such a hearing.

However, once the hearing has been granted, the evidence must show that the government agent was either reckless or intentionally untruthful for probable cause to be found lacking. *United States v. Turck; United States v. Reynolds; United States v. Carmichael*; all *supra*. Even if the agent is reckless, the misrepresentation must be material or there is no justification for suppressing the evidence. *Ibid.; Franks v. Delaware, supra.*

■ Reviewing the information provided to the base commander, there were no misrepresentations made by the OSI agent; the only inaccuracy is the omission of the fact that the wife had looked for the items and not found them where she had hidden them.[5] Instead the agent informed the base commander that the wife had seen the items within "weeks" of the time of her statement.

We find the following apposite to this issue:

[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

We find no evidence of record which establishes that the OSI agent intentionally misled the base commander, nor did his failure to disclose the information that the items were not then where the wife had hidden them to amount to recklessness. In all other respects the process of securing the search authorization was properly done. The information not provided does not eliminate the substantiality of the other information transmitted.

We hold that the authorization to search was based upon sufficient probable cause and was not defective.

In a related issue, appellate defense counsel assert:

THE SEARCH AUTHORIZED BY THE BASE COMMANDER WAS NOT BASED ON PROBABLE CAUSE SINCE

---

5. This omission applies only to the gun and items taken at the robbery; the clothing worn by the accused was then in the wife's possession.

INFORMATION FURNISHED HIM WAS STALE.

We disagree.

The assertion again focuses on the fact that the accused's wife had not seen the stolen items and the gun within a week or two of her statement.

█ The question whether information as to the location of evidence sought to be seized is stale "must be determined by the circumstances of each case" for "time alone provides no magic formula for determining the presence or absence of a sufficient basis to authorize a search." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932); see *United States v. Britt*, 17 U.S.C.M.A. 617, 38 C.M.R. 415 (1968) and cases cited therein; *United States v. Bright*, 2 M.J. 663 (A.F.C.M.R. 1976). Although the length of time which has passed is an important consideration, other facts must be considered. When the crime under investigation is a robbery, and the desire is to search for the fruits of the crime, an additional factor which is likely to be most important is the nature of the property sought. 1 LaFave, Search and Seizure, § 3.7 (1978). As was held in *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975):

> Let it be assumed for the purpose of discussion that the defendant in fact robbed the bank on June 22 and that he immediately repaired to his home with his loot and its container, his weapon and his disguise. We think it may be conceded to the defendant that as late as September 17 there was little reason to believe that any of the bank's money or the money bag would still be in the home. But, the same concession cannot be made with respect to the revolver, the ski mask, and the clothing. The ski mask and the clothes were not incriminating in themselves, and apart from his prior felony record, possession of the pistol was not unlawful in itself or particularly incriminating. Moreover, people who own pistols generally keep them at home or on their persons.

See also *United States v. Collins*, 559 F.2d 561 (9th Cir. 1977); *Bastida v. Henderson*, 487 F.2d 860 (5th Cir. 1974).

█ We find these facts determinative of the issue of staleness: the weapon and the property had been in the home from the night of the robbery (15 April) until at least two weeks prior to the search (1 August); the property was not of a sort that was readily saleable; the accused had no reason to believe that his wife, who had previously aided him in hiding the goods, would divulge their whereabouts; the accused's home had been searched earlier with negative results; and the clothing and the gun were not, in and of themselves, incriminating.

We hold that the information supplied to the base commander was not so stale as to affect the probable cause to search.

In the last issue we discuss, appellate defense counsel assert:

THE CONFESSION OF THE ACCUSED WAS NOT VOLUNTARY.

Again, we disagree.

During the search of the accused's home which produced the evidence of the robberies, the accused approached Chief Master Sergeant Cole, his squadron first sergeant, and said, "Chief, can I talk to you?" Sergeant Cole waited until the room was clear, turned to the accused and said, "Okay, talk." [6] The accused then said, "I don't know why I did it. I wouldn't have done it if I hadn't been drinking." Sergeant Cole responded, "How did you know there was a game going on?" and the accused replied that he had played in the game several times. Sergeant Cole then told the accused "he should, at this point, either, you know, cough up to his attorney or one side or the other and tell them what went on." The accused called the area defense counsel and made no further statements.

Sergeant Cole testified that he knew that the accused had been advised of his rights,

---

6. The accused testified that Sergeant Cole said, "Go ahead and talk to me, I won't tell anyone."

Under the circumstances of this case, we accept Sergeant Cole's version.

that he had an attorney and that the accused's initial statement to him was completely unsolicited.

 Article 31, Code, 10 U.S.C. § 831, *supra*, prohibits the interrogation of a military person suspected of an offense without first advising him of his rights to remain silent and that any statement he makes may be used in evidence against him. However, such threshold advice is not mandatory in all instances. *United States v. Wood*, 22 U.S.C.M.A. 369, 47 C.M.R. 124 (1973). One such instance is when the statement of the accused is spontaneous and not in response to questioning. *United States v. Workman*, 15 U.S.C.M.A. 228, 35 C.M.R. 200 (1965). Where there are questions asked, the Court of Military Appeals has fashioned two tests. The first looks to whether the interrogator was acting in an official capacity or was motivated solely by personal considerations. If the former is true, then a preliminary warning is mandated. See *United States v. Duga*, 7 M.J. 891 (A.F.C.M.R.1979) and cases cited therein. A more recently proposed test looks solely to whether the interrogator has some position of authority over the accused. *United States v. Dohle*, 1 M.J. 223 (C.M.A.1975).[7]

 Applying these principles to the case at hand, we hold that the accused's first statement to Sergeant Cole was spontaneous and not prompted by any interrogation. *United States v. Workman, supra.* Sergeant Cole could reasonably have expected the accused to talk about some personal matter rather than something which might have incriminated him. We cannot say that Sergeant Cole knew or should have known that the accused was about to make an incriminating statement. See *United*

States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.R. 232 (1969); *United States v. Nowling*, 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958); *United States v. Henry*, 21 U.S.C.M.A. 98, 44 C.M.R. 152 (1971). Although Sergeant Cole suspected the accused of having committed an offense, the totality of the circumstances does not convince us that he was "interrogating" the accused about that offense. Instead, we think that he was merely acting in his role as first sergeant and being concerned about the welfare of one of his men.

We feel that the same logic applies to Sergeant Cole's question.[8] It was not phrased so as to elicit incriminating information, and it is reasonable to believe that he was most interested in finding out about an illegal gambling game in the barracks. Indeed, after the accused's answer, Sergeant Cole properly terminated the conversation and advised the accused to talk to his counsel.

We hold that the accused's statements were voluntary, not the product of an official interrogation, and that a preliminary warning of rights under Article 31 was not mandated.

The findings of guilty and the sentence are

AFFIRMED.

HERMAN and ARROWOOD, JJ., concur.

---

7. The precedential value of *Dohle* is questionable since the stated test is announced only by the author judge, and the other two judges concurred in the result based on earlier authorities.

8. The review of the staff judge advocate found the accused's first remark spontaneous, but found that the accused's reply to the question inadmissible because it violated Article 31.