[No. 11181–7–I.  Division One.  March 21, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. HESTER A. BONAPARTE, *Appellant.*

*Philip Mahoney,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Alvin Littles, Deputy,* for respondent.

RINGOLD, J.—The defendant, Hester A. Bonaparte, appeals from the judgment and sentence imposed after his conviction for possession of a controlled substance. He claims that the evidence should have been suppressed because police had no probable cause to arrest, and that the case should have been dismissed due to a violation of his constitutional right to a speedy trial. The principal issue presented is whether the marital privilege[1] was violated.

---

[1]Former RCW 5.60.060(1):

"A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the hus-

We find no error and affirm.

Following a pretrial hearing the trial court denied Bonaparte's motions to suppress the evidence and to dismiss the case and entered findings of fact, which we summarize. On November 8, 1980, William Boggs, a federal narcotics agent, received a telephone call from Mrs. Bonaparte informing him that her husband, the defendant, was at the Los Angeles International Airport, would be purchasing drugs and then returning to Seattle. On several occasions over the previous month Boggs had received information from Mrs. Bonaparte, which he verified as accurate, that the defendant was engaged in narcotics transactions. Boggs located the defendant's vehicle at the Seattle–Tacoma Airport, but could find no airline reservation under his name.

Late evening on November 8, 1980, at the Seattle–Tacoma Airport Boggs and another agent observed Mr. and Mrs. Bonaparte disembarking from a Los Angeles flight and heading toward the parking garage. The agents stopped the defendant, identified themselves, requested that he show identification, and then asked to see his airline tickets. The defendant's identification was in his own name, but the tickets were issued under the names of David Vaughn and Mrs. P. Jones. Bonaparte explained that he must have been issued the wrong tickets, stated that he was not carrying drugs, and refused to submit to a bodily search. He was arrested, searched, and found to be carrying hydromorphone, a controlled substance.

The trial court concluded that the police had probable cause to arrest and that there were no violations of the speedy trial rule. The court found that Bonaparte fit the profile of a drug runner by virtue of his having traveled to

band; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to a criminal action or proceeding for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian . . ."

and from Los Angeles on the same day, under an assumed name, and without luggage. The court determined that these facts coupled with the information received from Mrs. Bonaparte combined to form probable cause for arrest.

The State's information was filed on May 28, 1981, and the defendant was arraigned on June 10, 1981. The pretrial hearing was concluded on September 23, 1981, and the trial on December 8, 1981.

## THE MARITAL PRIVILEGE

Bonaparte contends that by permitting Boggs to testify to the statements made by Mrs. Bonaparte, the trial court allowed Mrs. Bonaparte to testify against her husband in violation of the marital privilege, RCW 5.60.060(1). There are two distinct privileges contained in this statute. *See generally* Bigelow, *The Marital Privileges in Washington Law: Spouse Testimony and Marital Communications,* 54 Wash. L. Rev. 65, 67 (1978). The first is the testimonial privilege, which prevents a spouse from being examined as a witness for or against the other spouse without the consent of the other spouse. *State v. Thorne,* 43 Wn.2d 47, 55, 260 P.2d 331 (1953). The second is the confidential communications privilege, which prevents a spouse from being examined as to confidential communications made by one to the other during the marriage. *Thorne.*

There are different rationales for the two privileges. The testimonial privilege requires an existing marriage and endeavors to foster domestic harmony and prevent discord. *Thorne.* The communications privilege applies to all confidential exchanges and is intended to encourage mutual understanding and trust. *Thorne.*

It is his spousal testimonial privilege the defendant contends was violated by allowing Boggs to relate Mrs. Bonaparte's statements. He relies on *State v. Clark,* 26 Wn.2d 160, 173 P.2d 189 (1946), where the court said:

> The statute [RCW 5.60.060] means just what it says. No spouse shall be examined as a witness for or against the other spouse without the consent of such spouse.

We do not believe that it is proper to permit a third person to relate a statement made by one spouse against the other which that spouse would not be allowed to relate if called as a witness. Testimony should not be permitted to enter through the back door which the statute forbids to enter through the front door.

(Citations omitted.) *Clark,* at 168.

■ The testimonial privilege, however, has been severely criticized by commentators as lacking a modern policy rationale.

The privilege has sometimes been defended, after the manner in which we find reasons for inherited customs generally, as protecting family harmony. But family harmony is nearly always past saving when the spouse is willing to aid the prosecution.

C. McCormick, *Evidence* § 66, at 145 (1954). Washington courts have accordingly narrowly interpreted the testimonial privilege, holding that it does not prevent third persons from testifying to statements made by a spouse out of court. 5 K. Tegland, Wash. Prac., *Evidence* § 210, at 429 (2d ed. 1982).

In two recent cases we have held that the testimonial privilege does not bar a spouse's statements offered to demonstrate probable cause rather than to prove the truth of the matter stated. This court in *State v. Osborne,* 18 Wn. App. 318, 569 P.2d 1176 (1977) upheld a search warrant based upon an officer's affidavit which recited statements made to him by the defendant's wife. We explained: "It is clear that evidence that would not be competent or admissible at trial may nevertheless furnish 'probable cause' for the issuance of a search warrant." *Osborne,* at 322. *State v. Diana,* 24 Wn. App. 908, 604 P.2d 1312 (1979) held that statements by the defendant's wife furnished the police with probable cause to enter the family house. Following the analysis in *Osborne,* the court in *Diana* held the privilege inapplicable. These previous decisions are controlling. We find no violation of the testimonial privilege here.

## PROBABLE CAUSE TO ARREST

Bonaparte next contends that Mrs. Bonaparte's statement that her husband would be returning to Seattle carrying drugs cannot form the basis for probable cause to arrest because it is a statement of intent to commit a crime in the future. He relies on *United States v. Roberts,* 333 F. Supp. 786 (E.D. Tenn. 1971) where the court stated: "A search warrant will not issue upon an affidavit reciting only the anticipation of a future offense." *Roberts,* at 787. *Roberts* is distinguishable. In *Roberts* the defendant contended that the search of his vehicle was invalid because police had adequate time and information to obtain a warrant. Rejecting this argument, the court found that the police had insufficient reason to believe that defendant was transporting contraband until they spotted his vehicle on the highway, which then furnished them with probable cause to conduct a warrantless search. If accepted, Bonaparte's argument would prevent most informants' tips from furnishing the basis for probable cause.

The defendant next argues that statements allegedly made to Boggs by Mrs. Bonaparte's daughter over the telephone cannot form the basis for probable cause to arrest because the daughter's reliability was not established. The trial court did not consider the daughter's telephone call, determining that probable cause existed based on other facts. This court, therefore, need not address the question.

The defendant also contends that, under *Reid v. Georgia,* 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980) (per curiam), the fact that he fit the drug courier profile used by federal narcotics agents was insufficient to establish probable cause to arrest. This did not, however, form the primary basis for the arrest. The trial court specifically required more to demonstrate probable cause.

Police may arrest based on probable cause to believe that a felony is being committed. *State v. Thompson,* 93 Wn.2d 838, 613 P.2d 525 (1980). Probable cause for an arrest exists

"where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979) (quoting with approval from *State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974)). The standard takes into consideration the special experience and expertise of the arresting officer. *State v. Cottrell,* 86 Wn.2d 130, 542 P.2d 771 (1975).

Probable cause here depended in substantial degree upon the reliability of the information provided by Mrs. Bonaparte. When information establishing probable cause is supplied by an informant, the State must meet the 2–prong test of *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). To satisfy the *Aguilar–Spinelli* test, the State must show (1) the reliability of the informant, and (2) the reliability of the informant's information. Both prongs were satisfied here.

Evidence presented at the hearing demonstrated Mrs. Bonaparte's reliability as an informant. Boggs testified and the trial court found that Mrs. Bonaparte provided information on several occasions approximately 1 month prior to her husband's arrest, indicating that he was engaged in narcotics transactions on certain nights. This information was confirmed. Mrs. Bonaparte's reliability was established.

The reliability of her information was demonstrated as well. The court found that the defendant had left his vehicle at the airport, arrived on a flight from Los Angeles when Mrs. Bonaparte said he would, and made the trip in 1 day, without luggage, and under an assumed name. This is sufficient to corroborate the tip and therefore, to satisfy the second prong of the test. Probable cause existed to arrest Bonaparte.

SPEEDY TRIAL

Bonaparte's final contention is that his right to a speedy trial under the sixth amendment to the United States Constitution was violated by virtue of the delay between his arrest on November 9, 1980, and the filing of charges on May 28, 1981. The United States Supreme Court has recently held:

Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, *see United States* v. *Lovasco,* 431 U. S. 783, 788–789, [52 L. Ed. 2d 752, 97 S. Ct. 2044] (1977), . . . *no Sixth Amendment right to a speedy trial arises until charges are pending.*

(Italics ours.) *United States v. MacDonald,* 456 U.S. 1, 7, 71 L. Ed. 2d 696, 102 S. Ct. 1497 (1982). Bonaparte does not allege a deprivation of due process. His argument is without merit.

We affirm.

ANDERSEN, C.J., and DURHAM, J., concur.

Reconsideration denied April 26, 1983.

Review denied by Supreme Court July 19, 1983.