[Nos. 8268–7–III; 8269–5–III.   Division Three.   March 24, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. BLANE A. WHITE, ET AL, *Appellants.*

*Rick Hansen, Rakow & Hansen,* and *Ernest Reynolds,* for appellants (appointed counsel for appeal).

*Gerald Matosich, Prosecuting Attorney,* for respondent.

THOMPSON, A.C.J.—Blane and Tammy White, husband and wife, appeal their convictions for possession of a controlled substance, contending the court erred by refusing to sever their cases and by refusing to conduct an in camera hearing to examine the credibility of a search warrant affiant. We reverse and remand for new trials.

On May 10, 1986, Klickitat County Sheriff's Deputy Elmer J. Kinder obtained a warrant to search the Whites' apartment. Deputy Kinder's affidavit in support of the warrant contained information obtained from a confidential informant. The affidavit stated:

> Saturday May 10th–86 I [received] a phone call from a [confidential] informant advising that Apartment #10 of the Ivor Jones Apartment Complex, located in Murdock, has within the apartment two tupperware type containers which contain the controlled substance Crank (Methamphetamine). The informant advises that the tupperware containers, one of which is full and the other half full, is located within the kitchen area to the left of the sink.
>
> The informant advises that the residence is occupied by Blane, his wife and two small children, with occasional [visitors] at times.

Blane also has a safe in the bedroom closet of the bedroom occupied by Blane and his wife. The safe [supposedly] has cash from previous sales and additional controlled substance, Crank & Marijuana.

Informant has been in the residence within the last 24 hrs and observed the controlled substance in the tupperware containers.

. . .

I believe the informant to be credible & reliable for the following reasons:

I have known of the informant for the past 5 weeks. The informant has in the past given information that controlled substance, Crank was to be found at a specific location and/or on persons who were named and described by said informant. The locations & names were subsequently investigated and determined that the information was correct in all respects.

Information furnished by the informant has resulted in the purchase of crank by the informant, on two separate occasions within the last five weeks, from Blane White.

The informant has never given me false or misleading information nor have I been given reason to doubt the informant's ability to [identify] controlled substance, Crank. I [know] the informant to be [familiar] with the methods of packaging, consumption and transfer of Crank. The informant also knows what Crank is from his past [experience] of personal use.

The subsequent search of the Whites' apartment resulted in confiscation of a straw containing a methamphetamine residue. Blane and Tammy White were charged with possession of a controlled substance.

The trial court denied the Whites' motion to suppress the evidence obtained in the search. Blane White then moved for reconsideration and requested that the court conduct an in camera hearing to examine the veracity of Deputy Kinder's affidavit. In support of this motion, the Whites submitted essentially identical affidavits alleging that they knew the identity of the informant and that they believed the informant would not have given Deputy Kinder the information in his affidavit. Their affidavits also

disputed specific allegations in Deputy Kinder's affidavit. The trial court denied the motion for reconsideration.

Before trial, the Whites also moved to sever their cases, on the ground that each wished to testify on his or her own behalf, and that each wished to invoke the marital privilege to prevent the other from testifying. The trial court denied the motion to sever and both defendants testified at trial.

A jury found both defendants guilty of possession of a controlled substance.

The first issue is whether the trial court abused its discretion in denying the Whites' motion to sever their trials. Severance, pursuant to CrR 4.4, is a matter within the discretion of the trial court. *State v. Grisby,* 97 Wn.2d 493, 647 P.2d 6 (1982), *cert. denied sub nom. State v. Frazier,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). The fact that the defendants' interests conflict in itself does not require severance, and a court's ruling will not be reversed in the absence of manifest abuse of discretion. *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968). In Washington, criminal defendants have a constitutional right to testify on their own behalf. Const. art. 1, § 22 (amend. 10). However, RCW 5.60.060(1) prevents a criminal defendant's spouse from testifying for or against the defendant without the consent of the defendant (except under circumstances not relevant here). *State v. Thorne,* 43 Wn.2d 47, 55, 260 P.2d 331 (1953); *State v. Bonaparte,* 34 Wn. App. 285, 660 P.2d 334, *review denied,* 100 Wn.2d 1002 (1983). In this case, both defendants informed the court before trial of their intent to exercise their constitutional rights to testify for themselves and their statutory rights to prevent each other from testifying.

In denying the Whites' motion to sever, the trial court stated: "[T]he marital privilege . . . does not prohibit a witness, the spouse, from being called, but only prohibits testimony as to privileged conduct". The court's ruling fails to recognize that RCW 5.60.060(1) contains two distinct privileges. The confidential communications privilege prevents a spouse from being examined as to confidential

communications made by one to the other during marriage. *Thorne,* at 55; *Bonaparte,* at 288. The testimonial privilege, which the Whites attempted to invoke here, prevents *any* testimony by a defendant's spouse without consent of the defendant. *See generally* Bigelow, *The Marital Privileges in Washington Law: Spouse Testimony and Marital Communications,* 54 Wash. L. Rev. 65, 70–80 (1978). The trial court apparently had overlooked testimonial privilege in making its ruling.

The testimonial privilege, grounded on the public policy of promoting marital harmony, has been criticized by commentators as lacking modern justification. *See* S. Stone & R. Liebman, *Testimonial Privileges* § 5.02, at 335 (1983). Washington courts have interpreted the privilege narrowly, holding that it does not apply to testimony by third persons regarding statements of a spouse, 5 K. Tegland, Wash. Prac., *Evidence* § 210, at 429 (2d ed. 1982), or to a spouse's statements offered to demonstrate probable cause. *State v. Osborne,* 18 Wn. App. 318, 569 P.2d 1176 (1977).

Nevertheless, the State points to no authority for the proposition that a trial court, in its discretion, may refuse to give effect to the statutory testimonial privilege where it directly applies. The State's reliance on *State v. Kosanke,* 23 Wn.2d 211, 160 P.2d 541 (1945) is misplaced. In that case, the appellant argued that the prosecution had indirectly violated the testimonial privilege by presenting evidence that put the defendant in the position of calling his wife as a witness to refute the evidence or of suffering what inferences the jury might draw from her failure to testify. The court observed that the defendant's wife was not called as a witness by the prosecution, and held there was no direct or indirect violation of the testimonial privilege. *Kosanke,* at 217–18.

Here, the court's refusal to grant severance denied each defendant the right to exercise the testimonial privilege. The State's argument that the Whites were not denied any rights or privileges is not persuasive. They were entitled to rely on the testimonial privilege in preparing their defense

and trial strategy. They were denied this right and speculation as to presence or absence of prejudice is not the issue.

■ This dilemma of conflicting constitutional and statutory rights appears to be a novel one in reported Washington decisions. However, a New Jersey court has addressed the issue, based on a testimonial privilege rule similar to Washington's.[1] In *State v. White*, 195 N.J. Super. 457, 480 A.2d 230 (1984), the court reluctantly held the married codefendants were entitled to severance as a matter of right. The court observed that severance was the only way to accommodate the defendants' right to testify on their own behalf and their right to refuse testimony by a spouse.

It is recognized that severance, granted as a matter of right to married codefendants in these circumstances, is subject to abuse. As the State observes, defendants also have a constitutional right *not* to testify, Const. art. 1, § 9, implying the defendants may later choose not to testify in their separate trials.[2]

Nevertheless, the language of Const. art. 1, § 22 (amend. 10) and of RCW 5.60.060(1), clearly at conflict in the present case, required severance as the only way to accommodate both. Failure to grant defendants' motion was a manifest abuse of discretion.

Having concluded the cases should be remanded for new trials, the issue of whether the trial court should conduct an in camera hearing to examine the credibility of the search warrant affiant must be addressed.

The Whites do not challenge the validity of the search warrant on its face. They appear to agree that the face of

---

[1]Evidence Rule 23(2), N.J. Stat. Ann. § 2A:84A–17(2) (West Supp. 1987) states in relevant part: "The spouse of the accused in a criminal action shall not testify in such action . . . unless (a) such spouse and the accused shall both consent".

[2]It also may be argued that testimony by one spouse at his or her own trial "waives" the testimonial privilege at the other spouse's trial. However, RCW 5.60.060(1) prevents spousal testimony without the defendant spouse's *consent*. Previous testimony by one spouse cannot be construed as *consent* by the other spouse to testimony at the other spouse's trial.

Deputy Kinder's affidavit established probable cause and satisfied the 2–prong test for reliability and credibility of an informant. *See State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984).

However, the Whites do challenge the basis for the affidavit in support of the warrant. They seek to show the affiant was not truthful or acted in reckless disregard for the truth. Upon a "substantial preliminary showing" of falsity, a defendant is entitled to a special evidentiary hearing to challenge the basis of the warrant affidavit. *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

Defendants in the position of the Whites here face a difficult problem in meeting the threshold requirement for a *Franks* hearing. Where the information is secret, the defendant lacks access to the very information that *Franks* requires. *See State v. Casal,* 103 Wn.2d 812, 818, 699 P.2d 1234 (1985).

The State's insistence on maintaining the informant's secrecy is based on the "informer's privilege", which is recognized by statute and court rule. RCW 5.60.060(5); CrR 4.7(f)(2). The purpose of the privilege is to encourage citizens to tell police what they know about crime and to further and protect the public interest in law enforcement. *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957); *State v. Harris,* 44 Wn. App. 401, 722 P.2d 867 (1986). However, when the informant is a material witness on the question of a defendant's guilt or innocence, the State's interest in protecting the informant's identity must be weighed against the defendant's interest in disclosure. *Roviaro,* 353 U.S. at 62; *State v. Harris,* 91 Wn.2d 145, 151, 588 P.2d 720 (1978). Where the informant's information is used only to establish probable cause, but is not relevant to the issue of guilt or innocence, a defendant has no constitutional right to disclosure. *McCray v. Illinois,* 386

U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967).[3]
Nevertheless, disclosure may be ordered where necessary
to assess the affiant's credibility or accuracy. *Casal,* at 817.
The risks of disclosure in such cases must be balanced
against the risk that nondisclosure may conceal police per-
jury. *State v. Wolken,* 103 Wn.2d 823, 829, 700 P.2d 319
(1985). This rule of discretionary disclosure recognizes the
possibility that, in some cases, a search warrant affidavit
may contain false allegations. *In re Rosier,* 105 Wn.2d 606,
615, 717 P.2d 1353 (1986); *see* 1 W. LaFave, *Search and
Seizure* § 3.3(g), at 704 (2d ed. 1987).

█ The procedure for deciding whether to disclose the
identity of the informant, and to inquire into the affiant's
veracity, is an in camera hearing pursuant to CrR 4.7(h)(6).
*Casal,* at 818–19. Under *Casal,* a court must conduct an in
camera hearing if a defendant's affidavit "casts a reasonable
doubt on the veracity of material representations made by
the affiant. Corroboration of the defendant's story is help-
ful, but not necessary". *Casal,* at 820. The *Casal* court cited
with approval a federal district court decision ordering an
in camera hearing where the defendant made only a "mini-
mal showing of inconsistency". *See United States v. Brian,*
507 F. Supp. 761 (D.R.I. 1981).[4]

The issue here is whether the Whites' affidavits cast "a
reasonable doubt on the veracity of material representa-
tions made by the affiant". *Casal,* at 820. Two recent deci-
sions by this court provide some guidance.

---

[3]Tammy White's reliance on *State v. Uhthoff,* 45 Wn. App. 261, 724 P.2d
1103, *review denied,* 107 Wn.2d 1017 (1986) as authority for a constitutional right
to disclosure is misplaced. Here, the informant's alleged statements were used
only to establish probable cause and appellants have no valid constitutional argu-
ment.

[4]A *Casal* hearing is required only where a search warrant affidavit contains no
other *independent* basis for establishing probable cause. *Casal,* at 820–21. In this
case, the parties agree that probable cause was based solely on statements alleg-
edly made by Deputy Kinder's secret informant.

In *State v. Harris,* 44 Wn. App. 401, 722 P.2d 867 (1986), the defendant presented testimony that tended to dispute the officer's version of the search, and attacked the credibility or accuracy of the informant by giving evidence to the contrary. The court held that an in camera hearing was not justified, because the defendant had presented nothing that was material to the issue of the credibility of the search warrant affiant; the defendant's evidence was directed to the issue of probable cause rather than to the affiant's credibility. *Harris,* 44 Wn. App. at 406.

In *State v. Blackshear,* 44 Wn. App. 587, 723 P.2d 15 (1986), the court reversed the trial court order requiring the State to answer interrogatories intended to enable the defendants to determine whether the search warrant affidavits contained false statements. With a limited record on review, the court found that the defendants failed to demonstrate "legitimate questions regarding the existence of an informant or the affiants' veracity". *Blackshear,* at 591.

The Whites' affidavits named the person whom they suspected to be Deputy Kinder's informant, and stated that they had been unable to locate or contact him. They stated that they believed the informant would deny any previous involvement as an informant, directly disputing the affiant's statement that the informant in the past had provided accurate information. The Whites alleged that the informant would testify that information regarding use, possession or sale of controlled substances was provided by the informant as rumors, rather than as matters of personal knowledge; these allegations disputed the affiant's statement that the informant had told him of the presence of "two tupperware type containers which contained the controlled substance Crank" in the Whites' apartment. Finally, the Whites' affidavits alleged that two drug purchases from Blane White to which the affiant referred actually occurred

at another apartment, and the affiant never observed the purchases.[5]

That the Whites' affidavits contain unsubstantiated allegations based on belief, as the State argues, is true. However, the allegations, if accurate, clearly call into question the veracity of the search warrant affiant, as required by *State v. Harris,* 44 Wn. App. 401, 722 P.2d 867 (1986). The State argues that the Whites' "allegations were contradicted by the testimony of the search warrant affiant". This argument begs the question, by assuming the affiant's testimony itself establishes his credibility. Indeed, the contradiction between the Whites' allegations and the affiant's testimony demonstrates the existence of the "legitimate questions" that were lacking in *Blackshear.*

If, as the State argues, a defendant must provide evidentiary proof of his allegations, the purpose of the *Casal* hearing process would be defeated. The "informer's privilege" allows the State to maintain the informant's secrecy, and thus denies to the defendant the very information he needs to prove his allegation. For this reason the defendant should be required to make only a "minimal showing of inconsistency". Corroboration of the defendant's allegation, although helpful, is not necessary. *Casal,* at 820.

In this case, the Whites' allegations cast "a reasonable doubt on the veracity of material representations made by the affiant". *Casal,* at 820. On remand, the trial court should conduct an in camera hearing as required by *Casal.*

The *Casal* hearing is minimally burdensome. Initially, the trial court need merely verify the identity of the true

---

[5]The affiant did not claim in this case that the alleged purchases were so-called "controlled buys", in which an informant is closely monitored before and after the transaction. Deputy Kinder testified at the suppression hearing that, while the informant was under observation during the transactions, one of the officers who participated in the observation later died. For this reason, the State apparently was unable to demonstrate the "controlled" nature of the alleged transaction.

informant. Only if the defendants have accurately identified the informant must the prosecution produce the informant to be questioned by the judge. If the judge finds that probable cause *certainly existed,* the inquiry ends. If probable cause is *definitely lacking,* the evidence should be suppressed. Only where probable cause is *questionable* is the judge required to order an open evidentiary hearing. *Casal,* at 821–22.

As *Casal* observed:

An in camera hearing serves to protect the interests of both the government and the defendant; "the Government can be protected from any significant, unnecessary impairment of . . . secrecy, yet the defendant can be saved from what could be serious police misconduct."

(Citation omitted.) *Casal,* at 819. *Casal* also observed that the informer's identity is "fully preserved" in the in camera hearing. *Casal,* at 819. For this reason, Professor LaFave suggests:

[B]ecause the protection–of–informer–anonymity interest and protection–against–police–perjury interest do not collide head on as they do when the question is whether full disclosure of the informant's identity should be made, it should not take much to prompt the suppression hearing judge to order such a hearing. If the defendant "has fairly put in issue" the existence of the informant, whether the officer's report of the informer's prior reliability is truthful, or whether the officer's recitation of what the informant told him is correct, then an in camera hearing should be held. Nothing less will ensure that the protections of the Fourth Amendment have not been circumvented.

(Footnotes omitted.) 1 W. LaFave, *Search and Seizure* § 3.3(g), at 711 (2d ed. 1987).

Having found that the Whites are entitled to new trials, we decline to address other issues raised by Tammy White.

Reversed and remanded for new trials, with instruction for the trial court to conduct an in camera hearing, pursuant to *Casal*, on the issue of the credibility of the search warrant affiant.

GREEN and MUNSON, JJ., concur.