# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74662-6-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| CARLOS ALBERTO MARTINEZ, | ) | PUBLISHED OPINION |
| Appellant. | ) ) | FILED: January 16, 2018 |

LEACH, J. — Carlos Martinez appeals his conviction for possession of depictions of a minor engaged in sexually explicit conduct. Primarily, he challenges the Washington State Patrol's (WSP) warrantless search of a mirror image hard drive. But Texas police lawfully seized the hard drive and were not acting as agents of WSP at the time. The silver platter doctrine allowed the WSP to later examine the hard drive without a warrant.

Martinez also challenges the trial court's admission of his former spouse's testimony about confidential marital communications. Because Martinez acted as a guardian to the victim, the spousal privilege does not apply here. Martinez raises additional arguments related to a warrant and the prosecutor's conduct at trial, but those challenges also fail. We affirm Martinez's conviction.

FACTS

Carlos Martinez began working at the Monroe Police Department in 1989. He worked in several capacities, including as a Drug Abuse Resistance Education (D.A.R.E.) program instructor.[1] While working as a D.A.R.E. instructor, Martinez met A.K., who was in fifth grade at the time.

Beginning in 2001 or 2002, when A.K. was 13 or 14 years old, she began baby-sitting Martinez's two young children.[2] A.K. also came to the Martinezes' house when she was not baby-sitting. She would sometimes show up unannounced. She would help Martinez with chores and do her schoolwork at the house.

A.K. testified that Martinez began touching her in a sexual manner when she was 14. He would come up behind A.K., grab her hips, and push his hips against hers. Once, when she stayed overnight after baby-sitting, Martinez lay down next to her in the bed and touch her breasts and buttocks.

Sometime in late 2003 or early 2004, A.K. told Martinez and Martinez's then-wife, Julie West,[3] that she had accidentally cut herself by running into a knife on the kitchen counter while baby-sitting for another family. West asked

---

[1] D.A.R.E. is a program in which police officers instruct elementary school children about the dangers of drugs and violence.

[2] A.K. and Martinez gave conflicting testimony about whether A.K. or Martinez asked if A.K. could baby-sit.

[3] Julie West, formerly Julie Martinez, divorced Martinez in 2011.

A.K. to show her the wound. A.K. refused.

Around April 2004, Martinez set up a video camera in a bathroom. A.K. testified that while West was gone, after she helped Martinez with chores, he would tell her to take a shower. Over about a month, Martinez made several recordings of A.K. getting in and out of the shower. Martinez testified that he did this out of concern for A.K.'s mental health and that he hoped to find out if she was cutting herself.

In May 2004, West went on vacation. While West was gone, A.K. spent time at Martinez's house, helping with chores, doing homework, and watching movies. During this time, Martinez told A.K. to take a shower a number of times after she finished chores. A.K. described one occasion when she and Martinez watched a movie, sitting together in a big chair. A.K. testified that Martinez touched her hair and licked her fingers. A.K. testified that Martinez lay on top of her on the floor, "dry hump[ed]" her, and put her hand on his erection.

When West returned from vacation, she discovered a love note from A.K. to Martinez. She also discovered a video recording that Martinez had made of A.K. getting out of the shower and stored on the family computer. West confronted Martinez about the recording. He said he wanted to see if A.K. had cut herself on the kitchen knife as she had claimed. West claimed that when she asked Martinez why he still had the recording on the computer, he responded

that it was "nice to look at."

Not long after this, A.K. and her family moved from Monroe to Eastern Washington. Martinez and A.K. kept in touch. Martinez claims that in February 2007 they began a consensual sexual relationship when A.K. was 18 years old. In fall 2009, the Army recalled Martinez to active duty and stationed him in San Antonio, Texas. A.K. moved to Texas to be with him. They lived together for a short time.

After their relationship deteriorated in October or November 2011, Martinez gave A.K. the video recordings that he made of her in his bathroom in 2004. A.K. testified that Martinez told her he wanted to watch the tapes one last time and masturbate to them. She claimed he asked her to touch him as well.

A short time later, A.K. contacted the Texas police to turn over the tapes. She also told the Texas police that she began an intimate relationship with Martinez some time before she was 16. She later contacted WSP.

The Texas police obtained a warrant to search Martinez's home and seize his laptop computer and digital media storage devices. Then, a grand jury was convened in Texas to consider a possession of child pornography charge. But the grand jury refused to indict, returning a "no bill." The case was dismissed.

Texas police made a mirror image of Martinez's computer hard drive and, at WSP's request, sent it to WSP. Without obtaining a separate warrant, WSP

searched this mirror image hard drive. Texas police also sent WSP two actual laptop computers and hard drives seized from Martinez. After obtaining a warrant, WSP searched those items.

The State initially charged Martinez with two counts of voyeurism, two counts of child molestation, one count of rape of a child in the third degree, and one count of possession of depictions of a minor engaged in sexually explicit conduct. Later, the State dismissed the molestation and rape charges. It tried Martinez on only one count of voyeurism and one count of possession of depictions of a minor engaged in sexually explicit conduct.

The jury found Martinez guilty on both counts. Because the voyeurism charge occurred outside the statute of limitations, the trial court dismissed that count and convicted him on only the possession count.

ANALYSIS

Warrantless Search

Martinez contends that the trial court should have suppressed evidence found on the mirror image hard drive because WSP searched it without a warrant. When an appellate court reviews the trial court's decision on a suppression motion, it determines whether substantial evidence supports any challenged findings of fact and whether the findings of fact support the trial

court's conclusions of law.[4]   An appellate court treats the trial court's unchallenged findings of fact as true.[5]   Martinez challenges only the trial court's conclusions of law, which this court reviews de novo.[6]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." If a government action intrudes upon an individual's "reasonable expectation of privacy," a search occurs under the Fourth Amendment.[7]   The Washington Constitution provides greater protection of a person's privacy rights than does the Fourth Amendment.[8]   Article 1, section 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article 1, section 7 "focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant."[9]

Under the silver platter doctrine, however, evidence lawfully obtained under the laws of another jurisdiction is admissible in Washington courts even if the manner the evidence was obtained would violate Washington law.[10]

---

[4] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).
[5] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).
[6] Garvin, 166 Wn.2d at 249.
[7] Katz v. United States, 389 U.S. 347, 360-61, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring).
[8] State v. Cheatam, 150 Wn.2d 626, 642, 81 P.3d 830 (2003).
[9] State v. Myrick, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984).
[10] State v. Mezquia, 129 Wn. App. 118, 132, 118 P.3d 378 (2005).

"Evidence is admissible under this doctrine when (1) the foreign jurisdiction lawfully obtained evidence and (2) the forum state's officers did not act as agents or cooperate or assist the foreign jurisdiction."[11] Martinez does not dispute that Texas lawfully obtained the hard drive. And he does not challenge the trial court's findings that "WSP had no involvement in obtaining or serving the Texas warrant" and "Texas police did not act as agents of WSP when they obtained or served the warrant." Thus, under the silver platter doctrine, the evidence is admissible.

Martinez contends that the silver platter doctrine does not apply here because the Texas officers did not conduct any search that would be unlawful in Washington.[12] But Martinez mistakenly asserts that this doctrine requires that the search be unlawful in Washington. The doctrine requires that the State show only two things: (1) the search was lawful in Texas and (2) the Washington officers did not act as agents for Texas or cooperate or assist Texas in any way. Because the State proved this, the doctrine applies.

---

[11] Mezquia, 129 Wn. App. at 132.

[12] Martinez provides a lengthy discussion of the history of the silver platter doctrine and disapproves of Washington's decision to apply the doctrine. But he does not provide any argument for why Washington should abandon the rule.

Particularity

Next, Martinez contends that the warrant issued in Washington allowing the WSP to search his laptop computers and hard drives was overbroad.[13] The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The search warrant particularity requirement helps prevent general searches, the seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and the issuance of warrants on loose, vague, or doubtful bases of fact.[14] When a search warrant authorizes a search for materials protected by the First Amendment, a greater degree of particularity is required, and we employ a more stringent test.[15] While the First Amendment presumptively protects obscene books and films,[16] it does not protect child pornography involving actual minors.[17] We review whether a warrant meets the particularity requirement de novo.[18]

---

[13] The State contends that Martinez failed to preserve this challenge but because the warrant was not overbroad, we do not consider whether Martinez preserved this claim of error.

[14] State v. Perrone, 119 Wn.2d 538, 545, 834 P.2d 611 (1992).

[15] Perrone, 119 Wn.2d at 550.

[16] Perrone, 119 Wn.2d at 547-48.

[17] State v. Luther, 157 Wn.2d 63, 70-71, 134 P.3d 205 (2006).

[18] State v. Reep, 161 Wn.2d 808, 813, 167 P.3d 1156 (2007).

Martinez claims the warrant is overbroad because its language gives too much discretion to the officer executing the warrant. The warrant authorizes seizure of

> [a]ny photographs, pictures, albums of photographs, books, newspapers, magazines, and other writings on the subject of sexual activities involving children, pictures and/or drawings depicting children under the age of eighteen years who may be victims of the aforementioned offenses, and photographs and/or pictures depicting minors under the age of eighteen years engaged in sexually explicit conduct as defined in RCW 9.68A.011(3).

Martinez relies on State v. Perrone[19] where the Supreme Court held that the term "child pornography" is insufficiently particular because, like the term "obscenity," it leaves too much discretion to the officer in deciding what to seize under the warrant. The court noted that using the language of RCW 9.68A.011 could have easily made the warrant more particular.[20] The warrant here does not use the overbroad term "child pornography." Instead, as suggested by the Perrone court, it uses the language of the statute: "sexually explicit conduct." Martinez points out that in State v. Besola[21] our Supreme Court rejected an argument that a citation to the child pornography statute cured overbreadth. But the warrant here does more than simply cite to the statute, it uses the language "sexually explicit

---

[19] 119 Wn.2d 538, 553, 834 P.2d 611 (1992).
[20] Perrone, 119 Wn.2d at 553-54.
[21] 184 Wn.2d 605, 614, 359 P.3d 799 (2015).

conduct as defined in RCW 9.68A.011(3)."[22]  This language provides law enforcement with an objective standard to determine what should be seized.

Martinez also contends that the warrant was overbroad because it allowed seizure of lawful items.  Specifically, the warrant authorized seizure of materials "on the subject of sexual activity involving children."  The question of whether material is inherently illegal can be relevant to the degree of particularity required.[23]  But lawful materials also can be relevant to a crime.  The fact that the warrant authorizes seizure of lawful materials does not automatically make the warrant overbroad.  Here, possession of materials about sexuality involving children is relevant to the charged offense.  The warrant is not overbroad for authorizing seizure of these relevant materials.

Last, Martinez asserts that the warrant is overbroad because it does not clearly identify the victim of the charged offenses.  But, as the State points out, the affidavit, which was attached to the warrant and incorporated by reference, indicated that A.K. was the victim.  Thus, the warrant documents contained enough information for law enforcement to decide what to seize.

The warrant was sufficiently particular.

---

[22] Cf. Besola, 184 Wn.2d at 614 (noting that if the warrant had used the statutory language, it would likely have been sufficiently particular).

[23] State v. Chambers, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997).

## Warrant Validity

Next, Martinez contends that the trial court erred when it denied his motion to suppress evidence after a Franks[24] hearing. Specifically, he asserts that the warrant is invalid because Sergeant Detective Rodriguez left out material facts in his supporting affidavit.

"A search warrant may be issued only upon a determination of probable cause."[25] A court may invalidate a warrant and suppressed the fruits of the search if the person making the supporting affidavit recklessly or intentionally omits material information.[26] An omission does not invalidate a search warrant simply because it tends to negate probable cause.[27] Instead, the omitted information must be such that an affidavit including it could not have supported probable cause.[28] A defendant can show recklessness with evidence that "the affiant 'in fact entertained serious doubts as to the truth' of facts or statements in the affidavit."[29] "[S]erious doubts can be shown by (1) actual deliberation on the

---

[24] Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[25] State v. Jackson, 150 Wn.2d 251, 264, 76 P.3d 217 (2003).

[26] State v. Chenoweth, 160 Wn.2d 454, 477, 479, 158 P.3d 595 (2007) (holding that "under article I, section 7, only material falsehoods or omissions made recklessly or intentionally will invalidate a search warrant").

[27] State v. Garrison, 118 Wn.2d 870, 874, 827 P.2d 1388 (1992).

[28] Garrison, 118 Wn.2d at 874-75.

[29] State v. O'Connor, 39 Wn. App. 113, 117, 692 P.2d 208 (1984) (internal quotation marks omitted) (quoting United States v. Davis, 617 F.2d 677, 694 (D.C. Cir. 1979)).

part of the affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports."[30] Although an appellate court generally reviews the issuance of a warrant for abuse of discretion and defers to the magistrate's determination, the appellate court reviews a trial court's assessment of probable cause, which is a legal conclusion, de novo.[31] The appellate court treats all unchallenged findings of fact made by a trial court at a suppression hearing as true on appeal.[32]

Martinez asserts that the warrant is invalid because the supporting affidavit failed to state (1) that a Texas grand jury refused to indict him on charges of possession of child pornography, (2) that A.K. at one time stated that her first alleged sexual contact with Martinez occurred after she had reached the age of consent, and (3) certain statements made to A.K.'s school counselor.

First, information about the Texas "no bill" is not material. The trial court found, "There are a number of reasons a grand jury could return a 'no bill.' Such proceedings are secret and the Court does not know the underlying reasons for the decision." That a grand jury in Texas, for an unknown reason, chose not to indict Martinez for a Texas crime in Texas is not material to whether probable cause existed to investigate a Washington crime in Washington.

---

[30] O'Connor, 39 Wn. App. at 117.
[31] State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) ("Normally we give great deference to the issuing judge or magistrate.").
[32] State v. Gentry, 125 Wn.2d 570, 605, 888 P.2d 1105 (1995).

-12-

Second, Martinez does not show that the officer deliberately or recklessly omitted A.K.'s statement that she first had sex with Martinez when she was 17. Sergeant Detective Rodriguez testified that although A.K. initially told a WSP investigator that she did not have intercourse with Martinez until she was 17, she ultimately said that she had sex with him when she was 15. Sergeant Detective Rodriguez did not think her initial statement was important and believed she first had sex with Martinez when she was 15. He explained that victims commonly do not tell the truth immediately, but he believed that her story progressed to the truth. Because Martinez does not show that Sergeant Detective Rodriguez entertained serious doubts as to the truth of the facts included in the affidavit, this omission does not invalidate the warrant.

Third, Martinez does not show that Sergeant Detective Rodriguez deliberately or recklessly omitted A.K.'s statement to her school counselor. After West found the love note from A.K., she told A.K.'s school counselor. The counselor asked A.K. whether she was having an affair with Martinez. A.K. denied any sexual contact between her and Martinez and said she was disgusted by the thought. The counselor told a detective about this conversation. Sergeant Detective Rodriguez did not review this material before he prepared his affidavit, but he stated that he knew of several reasons why a child might deny sexual abuse. He said that in his experience, it was not unusual for children to deny the

occurrence of sexual abuse. Detective Sergeant Rodriguez's explanation shows that he did not intentionally omit this information and that he did not believe it to be important. Thus, he did not deliberately or recklessly omit it.

Martinez fails to show that any of these omissions were material and deliberately or recklessly made. The warrant is not invalid because Sergeant Detective Rodriguez failed to include them.

Martinez makes another argument about Sergeant Detective Rodriguez's affidavit. He contends that the affidavit did not show a required connection between the criminal activity and the place to be searched.[33] "'[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'"[34] The facts in the warrant adequately establish a connection to possession.[35] The boilerplate in the search warrant about what collectors of child pornography do generally is not the only evidence in the affidavit to connect the crime to Martinez's computer. The affidavit describes A.K.'s statements that Martinez stored sexually explicit images on his computer and that Martinez had several bank accounts to conceal

---

[33] The State does not respond to this argument. Martinez raised this argument below.

[34] State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (quoting State v. Goble, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

[35] Martinez also contends that the boilerplate language in the affidavit does not contain facts to show that Martinez engaged in trading or trafficking child pornography. But the State charged Martinez with possession, not trafficking child pornography.

things from West. In addition, the affidavit stated that Martinez sent sexually explicit messages over e-mail while posing as A.K. Thus, the affidavit included facts to show that relevant evidence could be found by searching Martinez's hard drives and online accounts.

## Harmless Error

Even if the court improperly admitted evidence obtained from the search of Martinez's hard drives, the error was harmless. "Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless."[36] "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error."[37] If the evidence untainted by the error is so overwhelming that it necessarily leads to a finding of guilt, the appellate court should uphold the conviction.[38]

The State introduced two pieces of evidence obtained from Martinez's hard drives: (1) screenshots that showed a Facebook message that Martinez sent to A.K.'s sister and (2) Internet searches for laws in Washington about voyeurism, Washington's statute of limitations for criminal prosecutions, and the ability of one state to extradite a person to another state. This evidence, while

[36] State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).
[37] Guloy, 104 Wn.2d at 425.
[38] Guloy, 104 Wn.2d at 426.

relevant to the charged offenses, was not essential to Martinez's conviction or necessary for law enforcement to have probable cause to arrest him.

To convict Martinez of possession of depictions of minors engaged in sexually explicit conduct, the State needed to prove that he knowingly possessed material showing depictions of the genitals or unclothed pubic or rectal areas of a minor or the unclothed breast of a female minor for the purpose of sexual stimulation of the viewer.[39]  Significantly here, the police received the video recordings containing this material directly from A.K.  Martinez himself testified that he recorded A.K. when she was a minor and kept the tapes until he gave them to A.K. years later.  A.K.'s testimony about the times Martinez touched her in a sexual manner around the time Martinez made the recordings indicates he made the tapes for the purpose of sexual stimulation.  And her testimony that he masturbated to the tapes shows that he watched the tapes for the purpose of sexual stimulation.  In addition, West testified that Martinez had told her that he kept the tapes because they were "nice to look at."  This evidence overwhelmingly supports Martinez's conviction.

### Spousal Privilege

Martinez also challenges the trial court's admission of West's testimony about confidential marital communications.

---

[39] RCW 9.68A.011(4)(f), .070.

Generally, a current or former spouse cannot be examined about confidential communications made during the marriage without the consent of the other spouse.[40] This rule tries to "encourage between husband and wife that free interchange of confidences that is necessary for mutual understanding and trust."[41] But "in some situations the policies that underlie the right to invoke a testimonial privilege are outweighed by the suppression of truth that may result."[42] Thus, this spousal privilege does not apply in a criminal proceeding for a crime committed against a child for whom the spouse is a parent or guardian.[43] In light of the legislative intent to punish child abusers and protect children from further mistreatment, Washington courts have liberally interpreted "guardian" to include a spouse acting in loco parentis, meaning functionally as a parent or

---

[40] RCW 5.60.060(1) ("A spouse or domestic partner shall not be examined for or against his or her spouse or domestic partner, without the consent of the spouse or domestic partner; nor can either during marriage or during the domestic partnership or afterward, be without the consent of the other, examined as to any communication made by one to the other during the marriage or the domestic partnership.").

[41] State v. Thorne, 43 Wn.2d 47, 55, 260 P.2d 331 (1953).

[42] State v. Wood, 52 Wn. App. 159, 164, 758 P.2d 530 (1988); see also State v. Waleczek, 90 Wn.2d 746, 751, 585 P.2d 797 (1978) (opining that "the husband-wife privileges contained in RCW 5.60.060(1) are also subordinated to the overriding and paramount legislative intent to protect children from physical and sexual abuse"); State v. Sanders, 66 Wn. App. 878, 884, 833 P.2d 452 (1992) (noting the strong public policy of ensuring effective prosecutions for crimes of sexual abuse against children).

[43] RCW 5.60.060(1).

guardian, even briefly.[44]  Whether a person is a parent or guardian depends on the particular facts and circumstances of the case.[45]  We review the trial court's decision that a spouse acted as a guardian for substantial evidence.[46]  "Evidence is 'substantial' if it is sufficient to persuade a fair-minded, rational person that the finding is true."[47]

Here, the trial court initially excluded West's testimony about confidential communications between Martinez and West during their marriage because insufficient evidence showed Martinez acted as A.K.'s guardian.  The next day, the court reconsidered and concluded that based on West's testimony about the household and A.K.'s role in the household, Martinez at times acted as A.K.'s guardian.  The court then permitted West to testify about confidential communications that took place during her marriage to Martinez.

Martinez contends that he was not a guardian of A.K.  He claims she was merely a baby-sitter for his children.  But West's testimony shows that the relationship went beyond this.  West testified that they hired A.K. as a baby-sitter, but that she came over when she was not baby-sitting.  A.K. would ask to visit, and West or Martinez would pick her up.  At times, A.K. would show up at the

---

[44] State v. Chenoweth, 188 Wn. App. 521, 529, 354 P.3d 13, review denied, 184 Wn.2d 1023 (2015); State v. Modest, 88 Wn. App. 239, 247-48, 944 P.2d 417 (1997).

[45] Waleczek, 90 Wn.2d at 753.

[46] See Waleczek, 90 Wn.2d at 753.

[47] State v. Jones, 186 Wn. App. 786, 789, 347 P.3d 483 (2015).

house, uninvited. On one occasion, she stayed at their house overnight and West explained that "[s]he wasn't really babysitting." West testified that they were responsible for A.K.'s care during the time she stayed with them. West testified that A.K. would help Martinez with house chores and he would help her with her homework. Martinez also helped A.K. learn to drive a car. A.K. ate meals with the family and "was invited to go on outings when a babysitter was not needed." This evidence is sufficient to support a finding that Martinez acted as A.K.'s guardian. This finding supports the trial court's decision to admit West's testimony about confidential marital communications.

Martinez attempts to distinguish this case, claiming that in cases where a court found a nonrelative to be acting in loco parentis, the child was very young.[48] But courts liberally construe the meaning of "guardian" under the marital communications statute.[49] Thus, courts have applied the guardian exception to cases with older children[50] and cases where the defendant acted as a guardian for the child for only a brief period of time.[51] Although the age of the child and the extent of the care are factors that courts consider, the exception to spousal

---

[48] Waleczek, 90 Wn.2d at 748; Wood, 52 Wn. App. at 165.
[49] Waleczek, 90 Wn.2d at 751; Sanders, 66 Wn. App. at 884; Wood, 52 Wn. App. at 164-65.
[50] Modest, 88 Wn. App. at 248.
[51] Waleczek, 90 Wn.2d at 748.

privilege has not been reserved for cases where the defendant has assumed all parental duties of a young child.

Even if the trial court incorrectly admitted West's testimony about confidential communications, the error was harmless.[52] "Error that is not of constitutional magnitude is harmless unless there is a reasonable probability, in light of the entire record, that the error materially affected the outcome of the trial."[53]

The statement at issue—that Martinez kept the recording because it was "nice to look at"—relates to whether the recordings served "the purpose of sexual stimulation of the viewer."[54] The State asserts that any error is not prejudicial in light of the other evidence that showed that Martinez kept the recordings of A.K. for the purpose of sexual stimulation. In particular, the State points out that Martinez kept the video for years after he recorded it before he finally gave it to A.K. And when he gave her the tapes, he told her he wanted to masturbate to the recordings "one last time" and then have A.K. touch him. Martinez asserts

---

[52] Martinez asserts that the court should not consider whether the testimony prejudiced his trial because accused persons are entitled to rely on the spousal privilege in preparing their defense and trial strategy. State v. White, 50 Wn. App. 858, 862, 751 P.2d 1202 (1988). But courts properly consider prejudice in examining whether there was a violation of the marital communications privilege. State v. Webb, 64 Wn. App. 480, 488, 824 P.2d 1257 (1992) (deciding that any error in admitting a statement protected by the marital communications privilege was harmless).
[53] Webb, 64 Wn. App. at 488.
[54] RCW 9.68A.011(4)(f), .070.

that the testimony is particularly prejudicial because it came from the defendant's wife. That a spouse believes an accusation can be highly prejudicial.[55] But here, West merely repeated statements by Martinez and did not comment about her belief in Martinez's guilt. We agree that these facts are sufficient for the jury to conclude that Martinez kept the recording for the purpose of sexual stimulation and that West's testimony that Martinez said the recording was "nice to look at" could not have materially affected the outcome of the trial.

Prosecutorial Misconduct

Next, Martinez claims prosecutorial misconduct denied him a fair trial. A defendant claiming prosecutorial misconduct bears the burden of establishing that the prosecutor's conduct was both improper and prejudicial.[56] Because Martinez failed to object to the prosecutor's conduct at trial, he waived this error unless the misconduct was so flagrant and ill intentioned that a trial court instruction could not have cured the prejudice.

Martinez contends that the prosecutor committed misconduct when she presented evidence and argument to show that Martinez was psychologically controlling A.K. Martinez claims the prosecutor made improper statements both in eliciting witness testimony and in comments in closing argument. First, the prosecutor asked A.K. about her reasons for moving to Texas, to which she

---

[55] State v. Johnson, 152 Wn. App. 924, 933-34, 219 P.3d 958 (2009).
[56] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

responded that she felt "forced and persuaded" by Martinez. The prosecutor later asked A.K. to explain if Martinez was sad at their last meeting. She responded that she was "breaking away and he was losing control." In closing argument, the prosecutor referred to Martinez as A.K.'s "Svengali" and explained "that's a literary figure whose name is synonymous with the manipulation of a young girl for the sexual desires of her master." The prosecutor then said that Martinez "chained [A.K.] to him. Not literally, but emotionally and psychologically, and it took her many years to break free."

First, Martinez fails to show misconduct because, contrary to Martinez's contention, the prosecutor did not directly violate a court order. A prosecutor's violation of a trial court's evidentiary ruling can constitute misconduct.[57] But Martinez misrepresents the court's rulings. The court initially ruled that specific evidence related to psychological control during their adult relationship was admissible because it was relevant to the molestation and rape charges. But when the State dropped those charges, the court reconsidered its prior ruling and excluded the evidence of prior bad acts under ER 404(b). The court's ruling excluded evidence that was intended to show psychological control during their adult relationship but did not exclude other evidence of psychological control.

---

[57] State v. Fisher, 165 Wn.2d 727, 748-49, 202 P.3d 937 (2009).

The prosecutor's general references to psychological control did not violate this ruling.

Even assuming Martinez has shown that the prosecutor's statements were improper, he still fails to show prejudice. Because Martinez failed to object to the claimed misconduct, he must show that the alleged misconduct was so flagrant and ill intentioned that an instruction would not have cured it.[58] Martinez must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[59] "Jurors are presumed to follow the court's instructions."[60] Here, the claimed misconduct did not involve evidence of specific bad acts that might prejudice the minds of the jurors despite a curative instruction. The jury could have followed an instruction to disregard the general evidence about psychological control. Further, evidence of psychological control is not particularly relevant to the charge on which the jury found Martinez guilty. Thus, general references were unlikely to have affected the jury's verdict in light of the other incriminating evidence. Martinez's prosecutorial misconduct claim fails.

---

[58] Emery, 174 Wn.2d at 760-61.
[59] Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).
[60] State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

## Ineffective Assistance

Finally, Martinez contends that if this court rejects his prosecutorial misconduct claim, then he received ineffective assistance of counsel. To succeed in an ineffective assistance claim, Martinez must show his attorney's performance fell below an objective standard of reasonableness and that deficient performance prejudiced him.[61] Courts give defense counsel's performance a great deal of deference and the defendant must overcome a strong presumption of reasonableness.[62]

First, Martinez does not show that his counsel's failure to object was unreasonable. The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[63] "Counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions."[64] Martinez does not show that his counsel's decision not to object to the prosecutor's conduct was not strategic.

Even if the conduct did fall below an objective standard of reasonableness, Martinez does not show prejudice.[65] As explained above, he

---

[61] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[62] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

[63] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[64] State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

[65] The State claims that Martinez's argument that the prosecutor's misconduct prejudiced him (that no instruction could have cured it) conflicts with his argument that his counsel's ineffective assistance prejudiced him (that his

does not show that the prosecutor's conduct was improper. Thus, he does not show that his counsel's failure to object prejudiced him.

CONCLUSION

We affirm Martinez's conviction.

_____Leach, J._____

WE CONCUR:

_____Spearman, J._____     _____Schindler, J._____

---

counsel's timely objection and instruction could have cured the prejudice). These arguments are inconsistent. But defendants are generally permitted to argue inconsistent defenses. State v. Frost, 160 Wn.2d 765, 772, 161 P.3d 361 (2007).